say these women judges you've seen one you've seen so um are you both sides ready to proceed this morning counsel then you're ready when you're ready  to proceed. May please the court. My name is Jack Hildebrandt and I'm representing the defendant in this case. Mr. Cooper was convicted of the first degree murder of Renee Perry and at trial the court allowed the state to use two prior convictions involving the defendant. The first one was a 2006. Incident involving the defendant's cousin where she alleged that he attempted to commit a sexual assault against her and then he choked her. And that was allowed into evidence under 115 7.4. For use as propensity evidence. The other one was a. 2010 where defendants spit on Miss Perry and that was allowed into evidence under the common law rules to show intent and to negate self-defense. Concerning the 2006 incident and the statute involved. To begin with, it's. Obviously very dangerous to allow propensity evidence into criminal trials. On that topic, the trial court also excluded two incidents of domestic violence, correct? I believe there was two other ones and actually it's another kind of strange thing that happened. That the court gave the prosecutor the discretion whether to use one of those other ones. Which involved an adult previous girlfriend. Or use one that involved the sexual assault of a child and gave prosecution. Well, if you use this one, you can't use that one. If you use this one, you can't use the other. So it's clear that the trial court did engage in balancing and recognize the potential prejudice. The court did, and my position is that he did it improperly because it should have been excluded. So anyway, the legislature took that into consideration, the extreme prejudice that these types of priors can show. And so it put into the statute two limitations. First, it has to be. A prior domestic violence type case. And second, the court still has to do a balancing test. And I think what that shows is that this statute was designed only to allow those prior incidences. That actually show specific propensity to commit the specific charge that's alleged in the indictment. It's not a general propensity statute. Do you have a case that says that? No, I think that's just a common sense interpretation of that statute. That's your interpretation. The Illinois Supreme Court said in Dabbs and in Donoho on sex offenses a similar statute. The identity or similarity doesn't have to be as close as what you purport to say here. I don't believe that that's what Dabbs says. I think Dabbs says that the statute abrogated the prohibition against propensity evidence, but it did not abrogate the balancing test. If I'm correct, if I remember that case correctly, the same victim here, the wife, an incident involving spitting cannot be used where he strangles the wife to death. That's your position. Because that's what we have here. That's what we have here, right? That's correct. That would only come in if it gets by the balancing test. Because obviously it is a domestic violence type of case. So, yes, of course, it's available to come in. Whether it does come in or not, that's a different question. And the trial court said, I'm letting it in to negate self-defense. And to prove intent. My first observation when I read that was, well, how does spitting prove intent to murder? And the second observation was that the judge had already did the balancing test and said, you know what, this is not probative enough to come in because the prejudice is too great. And when the court allowed the state then to use it for intent, the intent of spitting is so far removed from murder that the only value, the only way to show that it's intent to murder is through propensity. In this case, intent is exactly the same as propensity. I think the judge got it right the first time when he said that it's not probative enough to use this propensity. What changed was that the self-defense was put into play, correct? Yes, self-defense was put into play, but how does that negate self-defense? Well, to show who's the aggressor and who's the passive person. Doesn't it go to show her response to an aggressive movement by your client? It's a spitting incident. It's not a physical attack on her. And what that shows is that this is an insult. When you spit on somebody, that's insulting. It's also aggressive. That's a very demeaning, aggressive act. Would you agree? Yes. And what qualifying language is there in 115.7.4 that limits other incidences to similar conduct or identical conduct? There's nothing in there that says it has to be identical. There are things in there that say the court should or may consider if it's similar or not. There's no question identity is established. There's no question of identity. So we don't have to be concerned with identical, like, Motusaperani-type evidence. This is simply evidence to show that in this particular relationship, the defendant is the aggressive person and not the victim who cannot speak for herself because she's now dead. And that's certainly worthy of use of discretion in looking at it that way. Well, because he claims self-defense, that doesn't open up the doors to bringing bad character evidence under the common law. Under the common law, when you claim self-defense, you can introduce prior bad acts of the victim. That's right. Why shouldn't it be the same way when the defendant is claiming self-defense? The defense, the victim, or through the state, should have the opportunity to put in evidence that he was the aggressor, not me. Well, first of all, the victim is not going to go to prison. She's dead. Okay. Well, anyway, the victim's not on trial. Their liberty is not at stake. But the state's entitled to a fair trial, just like the defendant is. The difference is the burden of proof is proof beyond a reasonable doubt. Well, we would have to reverse Lynch, then. No, Lynch is good law. That's right. And Lynch says the reason why we don't allow in bad character evidence when somebody claims self-defense is because the defendant's liberty interests are at stake. And that evidence is very prejudicial, and it could deny the defendant a fair trial. The victim is not on trial. There's no threat of denying the victim a fair trial because the victim's not on trial. And what Lynch says is basically that it's not that it's irrelevant. It's just we're not going to allow it in because it's too prejudicial. You know, we have to protect the right to a fair trial. Is there a difference between character evidence, as you describe it, and evidence tending to show who an aggressor was in a self-defense situation? It can be. It all depends on the facts. The probative value of evidence is determined by, and the prejudice, for that matter, is determined by the facts of the case and what the charges are. So if you have somebody who is constantly beating up somebody else and going to trial, and you say, well, who's the aggressor here? Well, those priors really kind of show that, don't they? Or maybe in another case, it's not so clear, and you just want to show you really don't know anything about the parties, and you just want to bring up, well, this guy's a bad guy. So obviously he did it. I mean, that's what I mean by general propensity. This person's evil, so he commits evil things. He does evil things. He's charged with an evil matter, so he's guilty. That's general propensity, and that's what this statute, I think, is trying to keep out. Otherwise, why do a balancing test? If it's a prior domestic, why are we doing a balancing test? Because this is not a general propensity statute. It's trying to limit it to specific propensity to show the prior shows he did this, like in dabs. You know, the guy comes in and says, I didn't beat up my girlfriend. Don't look at me like that. You know, I'm innocent. The only reason why she's testifying that I beat her up is because she's crazy, and there was psychiatric testimony that came in that she was. And so what did the state do? They brought in the defendant's ex-wife and says the exact same thing happened to me. He got really drunk and beat me. What does that show? That shows the defendant beat up his girlfriend. Clearly he did. That's what this statute is for. That's a perfect example of dabs. Because the purpose of this statute is because these bullies, they pick out their victims. They look for weak, vulnerable people. And this guy picked out somebody who had psychiatric problems and then tries to go in there and say she's crazy. I'm not that type of person. That's exactly what it was for. Let me ask you this to follow up on Justice Bork's question. You say in your brief that the state noted that John Cotre's testimony about the defendant spitting in Perry's face proved the defendant was not acting in self-defense. And then you say, and established the defendant's bad character. Did the state ever actually say that? Say what? Say that this established the defendant's bad character? Not specifically. They just argued. Just look at the language. They're talking about his attitude. That's character. Talking about his character. And doesn't the statute say, not the statute, except for establishing bad character and cites the statute, except in instances where that evidence is admissible? No, I think that any evidence that you can show is relevant and probative and has more probative value than prejudice, really any of that evidence can come in. Anytime you introduce evidence of a prior bad act, there is obviously a reflection on the defendant's character. Is that the point you were trying to make here? No, it doesn't. In some cases more than others. I mean, that's why, you know, we have the balancing test. I mean, like, for example, somebody goes into a grocery store, steals a candy bar, walks out and gets stopped, and he says, I forgot to pay. So, well, that's, you know, believable. But what if he got caught doing the exact same thing to five different stores the day before? The exact same thing. That really shows intent. It really doesn't show, you know, we're talking about his character. It just shows that he tried to steal it this time. I mean, sometimes cases show more than others. I mean, that's basically how that works. And in this case, I think that breaks up a good point. When I first saw the argument that the state made that we need this case, this prior, the 2006, to show that when the defendant is confronted with a domestic conflict, he reacts with violence. And I thought, you know what? That has a lot of appeal to it. My first reaction was, yeah, that makes a lot of sense. But then I thought about it for a second, and I realized that is a meaningless argument. Because you can make that argument in every single case that is ever going to come under this statute. Every case. And the fact that there's this choking similarity, and I thought, yeah, that too. I mean, at first blush, I thought that really means something. And I thought about that for a second, too, and realized that that doesn't carry any weight. Because why? In every single case, again, there is always going to be a similar fact. Always. So you're saying it's admissible in every single case, regardless of whether self-defense is raised? I'm saying under the statute. Right, right. Under the statute. In every single domestic violence case, you're saying that that would apply, regardless of whether self-defense is raised? It doesn't matter whether self-defense is raised. I'm talking about under the statute, 115-7.4. Every time that that statute comes into play, that argument can be made. We need that prior to show that when a defendant is confronted with a conflict in a domestic situation, he reacts with violence. And then just throw in a similar act that occurred in that one. In this one, it was choking. So you're saying if that's so, then nothing else matters? You could always use that as a bootstrap to get in any prior? That's absolutely true. It's that easy to circumvent the court to really weigh the prejudice versus probative value. On that point, that's really the backdrop of the statute in the first place. The General Assembly changed the common law and said these instances of prior domestic violence should come in in these cases. It changed the prohibition of propensity evidence. It didn't create a wholesale it's all coming in. You still have to apply the common law balancing test. Well, you're not arguing that the victim was the same, that the conduct itself? Your argument is the conduct itself doesn't show what? What doesn't it show? The spitting. Why is spitting not relevant to the defendant's aggressive nature? It is relevant. I'm not saying that it's irrelevant. I'm saying it's not relevant enough to come in to prove murder. And I think the judge recognized that when he initially made that determination. It's not my determination. I can point to the court and say the court made it. The defendant indicated he was going to rely on self-defense and the judge reconsidered. The judge reconsidered and said that it's probative enough to prove intent, but intent is propensity in this because it is so far removed. If it was a closer thing like going into the store and stealing the candy bar, obviously it shows. On that point, you say a closer thing. Was the evidence in this case close? Yes, of course. Because once the jury learned that the defendant was a child molester, they weren't going to consider a lesser offense. They weren't going to consider self-defense. They were going to consider that this was second-degree murder. Why? Because at that point, they hated him. They weren't going to consider anything lesser than that but first-degree murder. Because at that point, they despised him. That's exactly what the statute was designed to keep out. He was denied a fair trial. As soon as they heard that evidence, this trial was over. That's my position. This wasn't a fair trial because of that. That one single thing. And this statute is designed to keep that out. This should have been kept out. Clearly. The only, you know, the actual thing that the state is doing, like I said, you can always make that argument that you need this to show this is how he reacts. In every case, you can make that. And then you throw in a similar fact. In this case, it was choking. What if the cousin testified he didn't choke me? He hit me on the side of the head and knocked me out. No problem. The state can still make the exact same argument except this time we need this to show he reacts violently by, instead of choking, knocking his victim out. He knocked her out. He knocked Renee out. There's a similarity there. But in this case, that similarity of choking pales in comparison to the facts of those things that are dissimilar. And the main one, of course, I've already said, the defendant was not on trial for criminal sexual assault of a child. That's why there's prejudice here. Good morning, Your Honors. I think the defense counsel is still arguing under the common law. I think under these statutes, which includes the sex offense statute and the domestic violence statute, it changes the whole balancing test. It changes the measurement of what is undue prejudice. The legislature had a legitimate concern of getting these cases effectively prosecuted, whether they were sex crimes under 7.3 or domestic violence crimes under 7.4 and 115-20. In these cases, the legislature is definitely intending that the stuff that may have been held out at one time under the common law is no longer held out because of the crisis we have in protecting people from sex offenders and from domestic violence. Well, the statute opened it up on propensity, which is in contradiction to the common law. To the common law, correct. You're saying that it changed the balancing test? Is it less of a burden on the state to prove a lack of prejudice than there was before? I think there is, and I think this court has agreed with that. In a sexual offense case in 2008, this court, Justice O'Malley, speaks to it, the rationale, and analyzes the sex offense statute and the balancing test. He basically says that now there are very modest restrictions dictating affirmance in these cases. When you talk about the abuse of discretion plus the statute, it has to be a very great amount of other crimes evidence, like in the case of Cardamom, out of this court. There's also the issue of the sexual assault or the attempt sexual assault nature. The court allowed that testimony in, correct? Correct. Why not limit the testimony to just the strangulation and concealing the body with clothes, which would be similar as domestic violence, and the jury would not have then heard the motive for that offense? The trial court could have limited the testimony, couldn't it have? Well, it could have, but it didn't. As soon as the jury heard that this guy isn't just a domestic batterer, he's also a sex offender. He tried to rape, I think it was his niece or cousin. Yeah, he had touched. Yeah, there's some problem, but they have to explain why he ended up. You couldn't say, well, he just choked this person. His cousin, for no reason, they had a show. They held out as much as possible to explain the background. There was an argument. How about just limiting the testimony that there was an argument? Well, there wasn't really an argument. He did some touching. She tried to go to her mother, and he stopped her and choked her until she collapsed. But the point is, do you need to go into that particular basis? Isn't the act that you suggest give rise to the choking, isn't that what is so highly prejudicial here? No, I don't think so. I think the choking is exactly what we're going for. If that's true, then why not take out the other part? Well, I think it helps explain it to the jury. It certainly does explain a lot, but is that relevant or material to the charge? I would not say it is the most relevant part towards the charge, but I would say that to help it to explain, basically they just said he tried to touch her and she left the bed. I do not think that's prejudicial, and I don't think it's highly prejudicial. It seems like you're arguing the continuing narrative exception to other crimes to bootstrap other crimes on top of other crimes. The other crime here is the strangling, that you're trying to get him to prove this case under the statute, but then you're bootstrapping the other crimes with the alleged attempted sex offense under a continuing narrative exception. Well, I would agree that there's something there, but under the statute, I think it is something that can be, that the legislature is allowing that now. We do have to have some explanation here. Yes, the whole reason, this is highly prejudicial to the defendant. Yes, that's what the legislature wants, and anything that's going to find him guilty, this shows he is not the person that he is saying. He's saying this was self-defense, where in fact this person was an aggressor. The victim was not an aggressor. In fact, when she spit in the face, she backed off. There was no yelling or screaming. It helps rebut that self-defense claim. The legislature is allowing that now. This might have been a problem under the common law at one time. Under domestic violence and sex crimes, I believe it is not. In fact, this court has stated, and unless it's a case like Kahrneman murder, we bring in 158 incidences of sexual abuse and 12 where it's just so over the top, we can pretty much bring this stuff in so we can effectively prosecute this defendant. It's clear from the statute. It's clear from this court's prior opinions of this. That is what the legislature is now allowing. That's why we would ask. In fact, I would say in this case we could have put in all four under this statute, especially if you read the analysis in the Walston opinion. Even without the evidence of other crimes in this case, was this case closed at all? No, it wasn't. The defendant's caught on videotape going into and out of the apartment after the victim's already dead. He gives a statement to the police, which is the only evidence of self-defense in this case, correct? Correct. Which on its face is almost preposterous. So why does the state need to put this evidence in? Well, you never know when you have a jury, Your Honor, and we have a right to do it. The legislature has given us that right. So I think to be an effective prosecutor and effective prosecution, we have to do everything we can to make sure that the jury understands that this is a bad person who committed the crime. But isn't the point to do beyond a reasonable doubt that he committed the offense not to prove that he's a bad person? Yes, you're right, Your Honor, and I misspoke in saying that, but the crime does show that he is that person, but also we have to show that he did not do this in self-defense. We must show that he was the one who brought the self-defense up. We have to rebut it in some way, and the legislature has given us that right to do that. Here's my issue with it. What connection does touching a 15- or 16-year-old girl inappropriately have to do with a violent murder? The connection is that when she tried to leave and stop this, she was choked. I get that part. Go back one step further. The basis for the encounter between the defendant and his cousin. Tell me why that is relevant to any of these issues of intent, knowledge, absence of self-defense. Again, I think it helps explain his intent, his motive. The fact is when something doesn't go his way, he chokes the person. He chokes while he operates under stress. Right. Or he reacts aggressively. The fact is that there was testimony that he was still the aggressor when the police officer came, and instead of saying, I'm sorry, he was again yelling at the victim. I think that we have that right to rebut that kind of evidence, especially when the defendant claims self-defense. The trial court led in this spitting incident. First of all, the trial court conducted a balancing test, found that it was too prejudicial, not going to let it in. At that point in time, there was no self-defense presented. Correct. But intent was still an issue at that point in time, correct? Correct. Certainly. I mean, the trial court has to look at intent. Sure. The trial court did a balancing test and said, this is too prejudicial, even for intent. Then self-defense is introduced. The trial court does an about-face and lets it in to rebut the self-defense, and certainly I can understand that rationale, at least in the face. Right. Why does the trial court let it in for intent, though? I think he should have let it in for intent, and I understand that. In the first place? In the first place, that that information should have been allowed in. So the trial court abused its discretion in the first instance. Well, I wouldn't say abused. He did a balance, but I think he certainly – well, yeah, he did abuse his discretion. I think we had the right to bring that information in. And I think we probably – excuse me a minute. We probably had the right to bring those other two charges in, too, under these statutes. And I just feel that the case law is supporting that now, and the legislature has allowed us to do that. There is very little now the state cannot bring in, unless it's a case like Kahneman where we just over-approved everything. If Your Honor's have no other questions. Questions? Thank you. Thank you very much. Counsel, do you wish to reply? Yes, Your Honor. It was an 11-year-old girl. She was 11 at the time. Justice Burke, I want to address something that I was talking – responding to before about, you know, this level of prejudice. Now, the state is saying that somehow the prejudice is lower. And like I said before, the prejudice and the probative value of evidence is determined by the facts of the case and by the charges. In this case, we know what the facts are. We know what the charges are. The level of prejudice and the level of probative value is static. It does not change. It is what it is. To say that somehow under the statute it's lower, that's like saying, you only have to show a little bit of probative value and we're going to admit it, even though the prejudice outweighs this, because we're going to pretend that the prejudice is way down here. So just show a little probative value and we'll come in. And I noticed in your brief as well that the language is – the probative value has to be substantially outweighed by the prejudice. The risk. Right, the risk of unfair prejudice. Right. Substantially outweighed. The risk. And there's always every piece of evidence. If it's admissible, if it's relevant, there's always going to be some prejudice. Would you agree? Always. Right. Always. But there's different types of prejudice. I mean, what the State was just arguing was, this is prejudicial, yeah, that's right. It comes in. No, there's two different kinds of prejudice. One is, let's say somebody hits another person, he gets charged, they bring him into court, the State comes in and says, I want to bring you a videotape. There was a guy videotaping this whole thing. Let's show the jury, you kind of punching this guy. You kind of say, too prejudicial, too prejudicial. No, of course not. The whole purpose isn't. But this is about a charge that's not at issue. This is a prior offense now we're talking about. The relationship's at issue. Things occurred in the relationship behind closed doors and there's no witnesses to what has happened in the past. And that is really what is behind this. The Supreme Court explained it. That's really what's behind this statute. That's right. The purpose of the statute. That's why they've opened the door to propensity. Right. But they've limited it. It's just not an open door policy. And I think that's what the State is trying to argue that it isn't. You know, if we're going to say that you have to show less prejudice, that abrogates the common law rule. And so that would violate what Dabbs said. It doesn't abrogate that rule. And the prejudice and probative value is static. It does not change. It is what it is. We have to live with it. Let me ask you this. If we were to find that there was some error in admitting the prior offenses, in particular the offense involving the touching and then the strangulation, how does that affect the verdict? Because the evidence seemed to be compelling. Without the defendant's testimony, the State had to videotape. You know, obviously the defendant went in and out of the apartment. He lied. He went to the hospital. The evidence was overwhelming that he committed this offense. You know, where is the evidence of self-defense other than his custodial statement? For argument's sake, let's say. No, I just want to ask you. The evidence does not seem to be close. Well, I understand that argument. And I understand how somebody could say, well, this evidence isn't close that the defendant is guilty of something. But of what? I mean, if you really look at this under, you know, realistic lenses, was this really first-degree murder? Why would he kill her? He's getting money from her. He's got a place to crash. She's got an apartment that he can go to. He's getting drug money from her. Why would he put an end to that? Wait a minute. How is he getting drug money from her? He's taking money from her. After she was dead, he took the money and went and bought $100 worth of drugs. But she was giving him grief every time. I thought his testimony was every time I used drugs, she gave me grief. And then that day, he was supposed to bring some packages upstairs. He stopped off and used drugs before he got up there. Let's remove that fact then. Scratch that. He's his girlfriend. They just spent the whole day together. No fighting. Nothing. Why is he killing her? I thought his statement was that they worked together all day. They had a bunch of packages. They were bringing them upstairs. He stopped off on his way and used drugs, which she got mad at every single time. So wouldn't that then, isn't it a reasonable inference then, he goes upstairs, she realizes he used drugs, and they get into an argument? Absolutely. Okay. Why is that first-degree murder? That's a jury question. How about she gets so mad, you're not taking my money, and pulls out a knife, he overreacts, and he kills her, but second-degree murder. Or the jury could say he had an unreasonable belief in self-defense, or he was provoked, and he couldn't control himself. It doesn't mean it's first-degree murder. There was more issues than first-degree murder here. So even if it's obvious he should be in prison, even if it's obvious he committed a serious crime here, it was for the jury to decide which one. I mean, that's my point. The jury was not going to even consider a lesser offense. It was not going to consider that he intentionally killed her, but was possibly provoked or something. Let me ask you this. Was there any one of these offenses that the state sought to offer that should have come in? You know, I'm not sure what our argument would be if, you know, the state puts in there, in other words, there's two other. How about putting those two other in, leave the child, the 11-year-old child out? Well, which one would you pick? If I were the judge, what would I pick? I don't know. Okay. I would have to evaluate them. Would you agree that the state was at least entitled under the statute to at least one? Really, that's for the judge to decide. I think they're entitled to as many as they can get in that actually show the specific intent to murder her. Because that's what they were trying to prove. They were trying to prove first-degree murder. Well, the statute allows it for any reason, including propensity. How about the same person? Limited to the ones that are the same person. I would agree with that one. Or a spitting incident would have come in? You know, if it was just a spitting incident that came in, I'm not sure I'd be raising this issue. A spitting incident is really nothing compared to this child case. Well, it's a statement that he also made that are particularly prejudicial or irrelevant. Yes. But, you know, if they're trying to prove this. It shows his attitude towards her. Right. But if they're trying to use that spitting incident and the things he said about her to prove a murder, doesn't the statute have to show why he spit in her face? What about Ilgen? Ilgen allowed in the trial court, you know, the Supreme Court said all the actions, including the statements the defendant made, pushing, shoving, slapping, all came in. I have no problem with Ilgen. Why is spitting different than spitting, shoving, slapping? Because one shows an intent to cause physical harm to another person, to harm that person. Verbal abuse also came in in Ilgen. Yes, verbal abuse. I mean, killing her. I mean, that's really probative. I mean, Ilgen, he obviously killed her. He threatened to kill her. He threatened to kill the kids. Constantly beat her to a pulp. That's the evidence that should come in in a case like this. And one more comment, if I may. As Justice Burke has noticed a couple of times, what about when self-defense came in? And, you know, when self-defense came in, I think that the actual probative value of that 2006 incident went down even further. Because it went down so far that it almost started like supporting the defendant's case. Because the jury could make a connection and say, well, he didn't kill his cousin. Maybe he's not a murderer. Maybe he's a bad guy, but he's not a murderer. So maybe it's not first-degree murder what happened here. Maybe he was provoked and then unlawfully killed her. Or maybe he acted recklessly. Or maybe it was self-defense. Maybe it was a murderer. So the probative value of that when self-defense is raised, it doesn't really make it go up. Actually, for that, what is the probative value of that? As far as propensity, we know what the value of that is. That he has a propensity to commit sexual assaults against children. That's the value of that. Thank you. Thank you very much. We will be in recess until 930 in the next argument. Thank you all very much.